HONORABLE CHRISTOPHER M. ALSTON

HEARING DATE: WEDNESDAY, JUNE 1, 2016
HEARING TIME: 9:30 A.M.
LOCATION: SEATTLE, COURTROOM 7206
RESPONSES DUE: AT TIME OF HEARING

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>SKAGIT GARDENS, INC. *et al.*[1]<br>3100 Old Highway 99 South<br>Mount Vernon, WA 98273<br>80-0161154,<br><br>               Debtors. | Lead Case No. 16-12879<br><br>DEBTOR SKAGIT GARDENS INC.'S EMERGENCY MOTION FOR ORDER: (1) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION THEREFOR PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE, AND (2) SETTING A FINAL HEARING |

      Skagit Gardens, Inc. ("Debtor" or "Skagit Gardens")), debtor-in-possession herein, moves the Court pursuant to sections 105, 361, 362, and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2, and 9013-1(d)(2)(E) Local Rules of Bankruptcy Procedure for the Western District of Washington (the "Local Rules"), for the entry of

---

[1] The Debtors are Skagit Gardens, Inc., RESPE LLC, Skagit TPPSPE LLC, and Skagit Real Estate Holdings, LLC (together, the "Debtors").

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 1 of 15

an Order (1) authorizing, on an interim basis, Skagit Gardens' use of cash collateral in which certain parties assert a security interest; (2) authorizing Skagit Gardens to grant, on an interim basis, adequate protection in favor of the Secured Parties (defined herein) on account of Skagit Gardens' use of cash collateral; and (3) setting a final hearing. This motion is based upon the files and records herein and upon the Declaration of Mark Buchholz in Support of First Day Motions (the "Buchholz Declaration") and Hannah Schmidt in Support of Motion to Authorize Use of Cash Collateral (the "Schmidt Declaration"), and the exhibits thereto.

## I. FACTUAL BACKGROUND

### A. The Debtors' Operations and Introduction to This Case

#### 1. The Debtors Business

Founded in 1966 and headquartered in Mount Vernon, Washington, Skagit Gardens (also sometimes referred to the "Company") is a wholesale nursery that grows two categories of plants, finished plants and plugs/liners, each grown for different types of customers. Buchholz Decl. at ¶ 3. Finished plants are sold and delivered to independent garden centers, retailers, and landscapers throughout North America. Buchholz Decl. at ¶ 4. "Plugs and liners" are essentially high quality starts that Skagit Gardens sells either through brokers or directly to greenhouses and nurseries for transplanting. Id. The greenhouses and nurseries then produce the finished plants for sale to their customers. Id. Skagit Gardens delivers its products on its own trucks, by common carriers, plane, and even barge. Buchholz Decl. at ¶ 5.

Skagit Gardens maintains a steady workforce of approximately 150 employees, with a seasonal high of 275 – 300 employees, making it one of the 20 largest employers in Skagit County. See Buchholz Decl. at ¶ 6 and Ex. A. Annual gross revenues are typically $20,000,000 – $25,000,000. Buchholz Decl. at ¶ 7.

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v

Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 2 of 15

For reasons discussed in more detail below, about six months ago, Skagit Gardens found it necessary to market the Company for sale. It has successfully located an interested buyer ("Buyer"), negotiated the terms of a sale, and plans to file a motion relating to the proposed sale and bidding procedures prior to the hearing on this Motion. Buchholz Decl. at ¶ 8. Skagit Gardens' business is seasonal in nature, with its primary growing and sale season beginning early in the year and running through August. Buchholz Decl. at ¶ 9. It has filed this case in order to consummate a sale transaction quickly, thereby capturing as much value as possible during the current growing season. Id. This approach will maximize the value of the business for the benefit of all of the Debtors' constituents, including their secured lenders, employees, and vendors and suppliers. Id.

Skagit Gardens owns two direct subsidiaries, Skagit Real Estate Holdings, LLC ("SREH") and Skagit TPPSPE ("TPPSPE"). Buchholz Decl. at ¶ 10. In turn, SREH wholly owns RESPE, LLC ("RESPE"). Id. Otherwise, neither SREH nor TPPSPE currently own any assets. Id. At some point in the past, TPPSPE owned some personal property used by Skagit Gardens in its operations, apparently as part of the financing structure previously in place. Buchholz Decl. at ¶ 11. Today, it holds no assets, and Skagit Gardens owns all of the personal property used in its operations. Id. TPPSPE is included in these cases due to the historical structure and to insure, to the Buyer's satisfaction, that it is acquiring all of the assets essential to the Company's operations. Id.

Skagit Gardens operates in two locations, both owned by RESPE. Buchholz Decl. at ¶ 12. The Debtors' main offices and ten acres of greenhouses are located on 21.59 acres at 3100 Old Highway 99 South, Mount Vernon, Washington (the "Highway 99 Property"). Id. The second location includes approximately three acres of greenhouses and 17 acres of outdoor growing beds, located at 14207 River Bend Road, Mount Vernon, Washington (the "River Bend Property"). Id.

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 3

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 3 of 15

### 2. Sale and Financing Efforts

In 2008, Aequitas Capital Group ("Aequitas Capital") purchased Skagit Gardens. Buchholz Decl. at ¶ 13. Over the years, Skagit Gardens' financial performance has been uneven, with some years profitable and some not. Id.

In early 2014, the Debtors engaged Hamstreet and Associates ("Hamstreet") to help restructure the Debtors' operations and to obtain replacement financing for the Debtors' line of credit provider, then Wells Fargo. Buchholz Decl. at ¶ 14. Working with Hamstreet, Skagit Gardens obtained a new line of credit from NewStar Business Credit, as Administrative Agent and Lender ("NewStar"), in late 2014. Id. The Company generated positive EBITDA of $933,000 in 2014. Buchholz Decl. at ¶ 15. Financial results were uneven during 2015, in part due to extreme weather conditions, including a prolonged drought in the West combined with a late spring in the inter-mountain region, and Skagit Garden again encountered financial struggles, ending 2015 with a slightly negative EBITDA of ($141,000). Id.

In fall 2015, NewStar conditioned its continued financing on the support funding by Skagit Gardens' shareholder, Aequitas Capital or an affiliate, of a $1.2 million seasonal line of credit ("Aequitas Seasonal Line"). Buchholz Decl. at ¶ 16. The plan was for the Aequitas Seasonal Line to be available beginning in January 2016 for Skagit Gardens' use in ramping up for the January through August growing season. Id. As discussed below, Aequitas Capital and its affiliates had previously loaned over $11 million to the Company over the years, which amounts were secured by security interests junior and subordinated to NewStar. Buchholz Decl. at ¶ 17.

In late 2015, Skagit Gardens was approached by a potential buyer interested in acquiring the Company as a going concern. Buchholz Decl. at ¶ 18. However Aequitas refused to consent to any

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 4 of 15

sale that failed to provide it a distribution on its secured debt or its equity. Consequently, the Debtors ended their discussions with that potential buyer. Id.

Ultimately, Aequitas advanced only $340,000 of the committed $1.2 million Aequitas Seasonal Line. Buchholz Decl. at ¶ 19. Aequitas' underfunding created severe cash pressures and shortfalls for Skagit Gardens as it headed into its critical growing season. Id. In late January 2016, Aequitas informed Skagit Gardens that it was incurring its own severe financial challenges, had made significant layoffs, and would be unable to make any further advances on the Aequitas Seasonal Line. Buchholz Decl. at ¶ 20.

In February 2016, faced with ongoing losses, Skagit Gardens renewed discussions with the interested Buyer and began negotiating the terms of a sale contemplated to close outside of a bankruptcy. Buchholz Decl. at ¶ 21. The parties were close the terms of a final, agreed Asset Purchase Agreement that would close without the need for a bankruptcy. Id.

Unfortunately, Aequitas' financial woes came to a head in early March of 2016. Buchholz Decl. at ¶ 22. On March 10, 2016, the Securities and Exchange Commission ("SEC") filed a lawsuit against Aequitas Management, LLC and numerous affiliates in the United States District Court for the District of Oregon, Case No. 3:16-cv-00438-PK. A Stipulated Order Appointing Receiver was quickly entered, and Ron Greenspan of FTI Consulting, Inc. was appointed receiver (the "Aequitas Receiver") over the various Aequitas entities ("Aequitas Receivership"). Skagit Gardens and its affiliates are not receivership defendants, relief defendants, or otherwise parties to the Aequitas Receivership. The Aequitas Receiver effectively stands in the shoes of the Aequitas entities as shareholder and subordinated lender to Skagit Gardens. Skagit Gardens' management and professionals have kept the Aequitas Receiver apprised of the sale efforts and potential need for a Chapter 11 to complete those sale efforts. Id.

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 5 of 15

In light of the complexities created by the Aequitas Receivership, the Buyer agreed to proceed with sale negotiations only in the context of a Chapter 11 filing by the Debtors, with the intended sale to be approved by an order of the Bankruptcy Court pursuant to Bankruptcy Code §363. Buchholz Decl. at ¶ 24.

As of the Petition Date, the Buyer and the Debtors have entered into an Asset Purchase Agreement (the "APA") setting forth the terms of an asset sale, subject to higher bids according to procedures set by this Court. The terms of the APA represent the highest and best offer for the Debtors' assets to date. Buchholz Decl. at ¶ 25.

Once it became clear, in early March, that a competitive sales process was likely to occur, Skagit Gardens management and professionals contacted numerous parties that might have an interest in acquiring the Company. Buchholz Decl. at ¶ 26. In total, they contacted 15 parties to gauge interest, 12 of which signed Non-Disclosure Agreements ("NDA") and received due diligence information. Of those, the Debtors' management and professionals had substantive meetings and conversations with at least 9, and 7 have expressed serious interest in purchasing Skagit Gardens. Id. The Debtors communicated to each that the sale process would be completed through a Chapter 11, with an initial stalking horse, against which competitive overbids could be submitted with an auction to determine the highest and best offer. Buchholz Decl. at ¶ 27. As part of these discussions with interested buyers, the Debtors have informed them that the process will move very quickly with competitive bids expected to be due in the latter part of June. Id.

The Debtors filed their consolidated cases to complete the sales process and ultimately consummate the highest and best transaction for the benefit of its existing secured lenders, employees, and vendors/suppliers. Buchholz Decl. at ¶ 28. The APA that will be filed shortly with the Court delivers a substantial recovery to Sterling Bank and Bank of the West (discussed below) projected at

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 6 of 15

approximately 85% of their debt, provides for continued employment of the Company's employees, and provides for value to unsecured vendors/suppliers and a continuing business relationship with the Company post-closing. Id. If competitive bids are received, all constituents will benefit. Id.

**B.       Secured Debt Structure**

   **1.       Bank of the West**

Bank of the West ("BOTW") holds first position deeds of trust against the Debtors' two pieces of real estate, the Highway 99 Property and the River Bend Property, as described below.

   **a.       2008 Credit Agreement.** In 2008, SREH and RESPE entered into a Credit Agreement with BOTW pursuant to which BOTW extended a term loan to SREH and RESPE in the maximum amount of $5,655,000 (the "BOTW Term Loan"). Buchholz Decl., Ex. B. The BOTW Term Loan is secured by a first position deed of trust against the Highway 99 Property and the River Bend Property. Buchholz Decl., Ex. C. Skagit Gardens guaranteed the BOTW Term Loan. Buchholz Decl., Ex. D. As of the Petition Date, the outstanding balance on the BOTW Term Loan was approximately $2,764,636. Buchholz Decl. at ¶ 32.

   **2.       NewStar/Sterling Bank**

In late 2014, Skagit Gardens entered into a Loan and Security Agreement with NewStar which provides for a revolving loan and a swing loan (together, the "NewStar Loans"). Buchholz Decl., Ex. E. Pursuant to the Loan and Security Agreement, Skagit Gardens granted NewStar a security interest in substantially all of its personal property. SREH, TPPSPE and RESPE were each additional credit parties to the Loan and Security Agreement. Skagit Gardens, SREH, Skagit TPPSPE and RESPE each executed a guaranty and a security agreement in favor of NewStar, with each pledging substantially all of its personal property (the "Prepetition Collateral"), including inventory and

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v

Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 7 of 15

receivables, and the cash proceeds thereof (the "Cash Collateral"), to secure the NewStar Loans. Buchholz Decl. Exs. F and G.

UCC-1 Financing Statements were filed on November 20, 2014 as follows:

| Grantor | Filing Number |
|---|---|
| Skagit Gardens | 2014-325-8104-8 |
| SREH | 2014-325-8103-1 |
| RESPE | 2014-325-8102-4 |
| TTPSPE | 2014-325-8101-7 |

Buchholz Decl., Ex. H.

In addition, RESPE granted NewStar a deed of trust, junior to BOTW's deeds of trust, against both the Highway 99 Property and the River Bend Property which was recorded in Skagit County on December 9, 2014. Buchholz Decl., Ex. I.

As of the morning of the Petition Date, the outstanding balance of the NewStar Loans was approximately $5,235,042.10. Buchholz Decl. at ¶ 38. Prepetition, Sterling National Bank ("Sterling Bank") acquired the NewStar Loans. Id.

**3. Aequitas**

a. Management Fee. In July 2008, Skagit Gardens entered into a Management Advisory Services Agreement with Aequitas Capital Management, Inc. ("Aequitas Management") pursuant to which Aequitas Management was to provide certain management and advisory services in exchange for a monthly fee (the "Aequitas Management Fee"). Buchholz Decl., Ex. J. Since the beginning of 2011, Skagit Gardens paid Aequitas management and success fees totaling $871,725. Buchholz Decl. at ¶ 40. As of the Petition Date, outstanding Aequitas Management Fees totaled approximately $60,000. Id.

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 8 of 15

b. <u>2010 Business Loan Agreement</u>. In November 2010, Skagit Gardens entered into a Business Loan Agreement with Aequitas Capital affiliate, Aequitas Commercial Finance, LLC ("<u>Aequitas Commercial</u>") pursuant to which Aequitas Commercial agreed to loan Skagit Gardens $1,650,000 (the "<u>2010 Aequitas Loan</u>"). Buchholz Decl., Exs. K and L. Through a series of amendments, the 2010 Aequitas Loan was increased to up to $9,000,000. Buchholz Decl., Ex. K. Skagit Gardens and TPPSPE executed security agreements pledging substantially all of their personal property to secure the 2010 Aequitas Loan as well as any other amounts owed by Skagit Gardens to any affiliate of Aequitas Commercial. Buchholz Decl., Exs M and N. A UCC-1 financing statement was filed in favor of Aequitas Commercial with the Washington Secretary of State on January 17, 2013. Buchholz Decl., Ex. O.

As of the Petition Date, the asserted amount owing under the 2010 Aequitas Loan was approximately $11,440,361. Buchholz Decl. at ¶ 44. Of amounts advanced by Aequitas, $6,378,219 was advance to pay off debt from third parties originally used by Aequitas to purchase Skagit Gardens, and $5,114,280 was provided as working capital to Skagit Gardens. <u>Id</u>.

c. <u>Interest Paid Since 2011.</u> Since the beginning of 2011, Skagit Gardens has paid interest to Aequitas totaling $871,725. Buchholz Decl. at ¶ 45.

d. <u>January 2016 Agreement re Seasonal Line</u>. As previously discussed, in January 2016, Skagit Gardens and Aequitas Commercial entered into a second Business Loan Agreement (the "<u>Aequitas January 2016 Agreement</u>") pursuant to which Aequitas agreed to loan Skagit Gardens $1,200,000 (the Seasonal Line discussed previously). Buchholz Decl., Exs. P and Q. A second UCC-1 financing statement was filed in favor of Aequitas with the Washington Secretary of State on December 29, 2015. Buchholz Decl., Ex. R. Aequitas advanced only a portion of the committed funds, or $340,000. Buchholz Decl. at ¶ 49.

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 9 of 15

    e.  <u>Subordination Agreement</u>. In connection with the NewStar financing, Aequitas Commercial executed a Subordination and Intercreditor Agreement. Buchholz Decl., Ex. S. Under the Agreement, Aequitas Commercial subordinated its security interest in Skagit Gardens' assets to the security interests in favor of NewStar securing the NewStar Loans and any post-petition financing provided by NewStar. <u>Id</u>.

  **4.**  **Agricredit**

  Skagit Gardens entered into a Lease Agreement with Agricredit Acceptance, LLC ("<u>Agricredit</u>") pursuant to which Skagit Gardens leases tractors. Buchholz Decl., Ex. T. UCC-1 financing statements with respect to the tractors were filed in Skagit County on March 31, 2015 and January 20, 2016. Buchholz Decl., Ex. U.

**C.**  <u>**503(b)(9) Claims**</u>

  Skagit Gardens estimates that pursuant to Bankruptcy Code § 503(b)(9), as of the Petition Date there is approximately $105,000 owed to creditors on account of the delivery of goods to Skagit Gardens within 20 days of the Petition Date which remain unpaid ("<u>503(b)(9) Claims</u>"). Declaration of Hannah Schmidt in Support of Motion to Use Cash Collateral ("<u>Schmidt Declaration</u>"). As discussed below, the Company's Cash Collateral Budget provides for the creation of a reserve to pay the allowed 503(b)(9) Claims.

**D.**  <u>**Use of Cash Collateral and Adequate Protection**</u>

  Skagit Gardens requires the immediate use of the Cash Collateral to continue uninterrupted operations for the benefit of its creditors and its estate, thereby avoiding immediate and irreparable harm to its business pending a final hearing pursuant to Bankruptcy Rules 4001(b)(2). Skagit Gardens is unable to obtain unsecured credit to fund its continued operations. Without use of Cash Collateral,

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA Doc 16 Filed 05/27/16 Ent. 05/27/16 17:26:40 Pg. 10 of 15

Skagit Gardens will be unable to pay its ongoing operating expenses, including payroll, and will thus be unable to continue ongoing business operations.

   1. **Replacement Liens**

Pursuant to § § 361 and 363 of the Bankruptcy Code, Skagit Gardens proposes to provide adequate protection of the interests of the parties asserting interests in its Cash Collateral, specifically Sterling Bank and Aequitas Commercial (the "Secured Parties"), by granting the Secured Parties liens in assets of the same kind, type, and nature as the Prepetition Collateral in which such Secured Party held a lien that is acquired after the Petition Date (the "Postpetition Collateral") and all proceeds of the Postpetition Collateral ("Postpetition Lien"), to the extent of any diminution in the Secured Lenders' interests in Prepetition Collateral as a result of Skagit Gardens use of Cash Collateral.

Skagit Gardens' Budget, attached as Exhibit A to the Schmidt Declaration, contains the projected cash expenses between the Petition Date and an anticipated sale closing in around July 8, 2016. The Budget tracks the Company's Working Capital Collateral (Cash + A/R + Inventory) from the Petition Date through such a closing. Specifically, the Budget shows total Working Capital Collateral of $9,273,548 on the Petition Date, and total Working Capital Collateral of $9,464,093 as of a projected July 8, 2016 closing date. Id. During this period, there is no projected deterioration in the Secured Lenders' collateral position, when the Replacement Liens are taken into account.

   2. **Super-Priority Administrative Expense**

Under § 507(b) of the Bankruptcy Code, all obligations subject to the Postpetition Liens have priority in payment over all other administrative expenses of the estates other than the Professional Fund (as defined herein), to the extent that the Postpetition Liens are insufficient to compensate the Secured Creditors for any diminution in the value of their interests as a result of the Debtor's use of Cash Collateral.

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 11

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 11 of 15

**3. Commitment Milestones**

As discussed above, the goal of this case is to quickly consummate a sale of the Company as a going concern for the benefit of all constituencies. The Debtor commits to meeting the following milestones in connection with the administration of these cases and the orderly liquidation of substantially all the Debtors' assets (each a "<u>Milestone</u>"):

    a. By no later than July 22, 2016, obtain an order from the Bankruptcy Court approving the Proposed Sale, in form and substance reasonably acceptable to Sterling Bank; and

    b. By no later than July 31, 2016, close the Proposed Sale.

**E. <u>Skagit Gardens' Need for Use of Cash Collateral</u>**

Without access to Cash Collateral, Skagit Gardens will be unable to meet its current working capital needs, pay ongoing ordinary course expenses, pay payroll and other taxes, obtain goods and services, meet customer obligations, obtain continued trade credit, and attract new business, all of which will severely and irreparably damage its business and the going concern value thereof. Skagit Gardens thus has an immediate and crucial need for access to its Cash Collateral to avoid any interruption in the flow of essential services. Cash Collateral is the only available source of adequate funds to meet such needs.

**F. <u>Professional Fund</u>**

The Budget provides for a fund ("<u>Professional Fund</u>") to pay the post-petition, allowed fees/costs of **all** professionals retained in this Chapter 11 case, whether by the Debtors or an unsecured creditors committee ("<u>Committee</u>"), assuming that one will be formed. The purpose of the Professional Fund is to assure that all estate professionals are treated identically. All amounts provided for in the Budget for the Professional Fund shall be added to any prepetition retainers paid by Skagit Gardens to its professionals, and shall be deposited into an interest bearing trust account

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 12 of 15

maintained by Bush Kornfeld, LLP, the Company's general bankruptcy counsel, for *pro rata* payment of allowed fees and costs to the Debtors' and the Committee's professionals, including any amounts payable pursuant to any other order entered by this Court authorizing interim periodic payment of professional fees, subject to final allowance of such fees and costs. To the extent the Professional Fund ultimately exceeds all allowed professional fees and costs of the estate, the remaining balance shall remain subject first to the security interests of the Secured Lenders and returned to Skagit Gardens for their benefit.

### III.  LEGAL DISCUSSION

**A.  Use of Cash Collateral**

Section 363(c) of the Bankruptcy Code provides that:

(2) The Trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless,

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Skagit Gardens represents that it is without sufficient funds to operate unless it uses Cash Collateral, as it holds no unencumbered funds nor sources of unencumbered funds, and that the present circumstances require Skagit Gardens to make use of Cash Collateral in order to maintain its ongoing business for the benefit of its estate and creditors. Id. Skagit Gardens has an immediate need to use Cash Collateral to maintain, preserve and protect its assets and has provided for adequate protection of the Secured Parties' interests in the Cash Collateral, as described above.

For these reasons, Skagit Gardens respectfully requests the Court authorize the use of Cash Collateral pursuant to the terms of the proposed Interim Order filed herewith.

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 13 of 15

B. **Adequate Protection**

As discussed above herein, in order to adequately protect the interests of the Secured Parties, each Secured Party shall be granted a Replacement Lien in post-petition assets of the same type in which their prepetition lien attached, in the same priority and validity as their prepetition lien, as necessary to secure the diminution in the Secured Party's interest, if any, as a result of Skagit Gardens' use of Cash Collateral. To the extent of any diminution in value ultimately due to Cash Collateral use not otherwise protected by the replacement lien granted herein, Secured Parties shall retain their rights under section 507(b) of the Bankruptcy Code. Importantly, the Budget projects no deterioration in the Working Capital collateral held by the Secured Lenders between the Petition Date and a projected sale closing date of July 8, 2016. Thus, the Replacement Liens provide adequate protection of the Secured Lenders' interests in the Prepetition Collateral.

In addition, the Company has negotiated the terms of a sale transaction with the Buyer, subject to higher and better bids that will provide substantial value to the Secured Lenders, employees, vendors and suppliers. The timeline to complete the competitive bidding process and close a sale transaction will be swift, with a projected closing date of July 8, 2016. This tightly organized process will protect the estate and its creditors from a protracted, unfocused process. Value will be preserved and distributed quickly.

As further adequate protection, Skagit Gardens shall maintain insurance on its assets as the same existed as of the Petition Date and will provide meaningful reporting to the Secured Lenders and the Committee during the case.

DEBTOR'S EMERGENCY MOTION FOR ORDER: AUTHORIZING USE OF CASH COLLATERAL, ETC. – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 14 of 15

## CONCLUSION

WHEREFORE, Skagit Gardens respectfully requests entry of an order in the form of the proposed Interim Order submitted herewith, authorizing Skagit Gardens' use of Cash Collateral and setting a final hearing at such time as the Court may direct.

DATED this 27th day of May, 2016.

BUSH KORNFELD LLP

By /s/ Christine M. Tobin-Presser
 Armand J. Kornfeld, WSBA #17214
 Christine M. Tobin-Presser, WSBA #27628
 Aimee S. Willig, WSBA #22859
Attorneys for Debtors-in-Possession

## CERTIFICATION OF COUNSEL REGARDING GUIDELINES REGARDING CASH COLLATERAL

The undersigned hereby certifies that the [Proposed] Order Authorizing Interim Use of Cash Collateral and Setting Final Hearing does not contain any of the provisions set forth in part A of Appendix A to the Local Bankruptcy Rules (Guidelines for Cash Collateral and Financing Stipulations).

DATED this 27th day of May, 2016.

BUSH STROUT & KORNFELD LLP

By /s/ Christine M. Tobin-Presser
 Christine M. Tobin-Presser, WSBA #27628
Attorneys for Debtors-in-Possession

DEBTOR'S EMERGENCY MOTION FOR ORDER:
AUTHORIZING USE OF CASH COLLATERAL, ETC. –
Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac23eq064v
Case 16-12879-CMA    Doc 16    Filed 05/27/16    Ent. 05/27/16 17:26:40    Pg. 15 of 15