HONORABLE CHRISTOPHER M. ALSTON

HEARING DATE: WEDNESDAY, JUNE 1, 2016
HEARING TIME: 9:30 A.M.
LOCATION: SEATTLE, COURTROOM 7206
RESPONSES DUE: AT TIME OF HEARING

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>SKAGIT GARDENS, INC. *et al.*[1]<br>3100 Old Highway 99 South<br>Mount Vernon, WA 98273<br>80-0161154,<br><br>Debtors. | Lead Case No. 16-12879<br><br>DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF DEBTORS' EMERGENCY FIRST DAY MOTIONS |

MARK BUCHHOLZ declares as follows:

1. I am the President of Skagit Gardens, Inc. ("Skagit Gardens"), which in turn, is the 100% member and manager of Skagit Real Estate Holdings, LLC ("SREH") and Skagit TPPSPE, LLC ("TPPSPE"). SREH is the 100% member of Skagit RESPE, LLC ("RESPE"). Collectively, Skagit Gardens, SREH, TPPSPE and RESPE are referred to herein as the "Debtors." I have personal

---

[1] The Debtors are Skagit Gardens, Inc., Skagit RESPE LLC, Skagit TTPSPE LLC, and Skagit Real Estate Holdings, LLC.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 1 of 15

knowledge of the facts set forth herein and am competent to testify to the same. I make this declaration in support of the following motions of the Debtors (the "Emergency Motions"):

    A.    Emergency Motion For Interim Order (1) Authorizing Use Of Cash Collateral and Granting Adequate Protection Pursuant To Sections 361 And 363 of the Bankruptcy Code; And (2) Setting Final Hearing;

    B.    Emergency Motion For Order Authorizing Debtor To Continue Use of Existing Cash Management System and Prepetition Business Banking Accounts and Checks;

    C.    Emergency Motion For Authority To Pay Prepetition Payroll and Commissions, Employee Benefits, And Related Expenses; and

    D.    Emergency Motion For Order Approving Adequate Assurance to Utilities.

2. Capitalized terms not defined in this Declaration shall have their meanings as ascribed in the Emergency First Day Motions.

**Background**

3. Founded in 1966 and headquartered in Mount Vernon, Washington, Skagit Gardens is a wholesale nursery that grows two categories of plants, finished plants and plugs/liners, each grown for different types of customers.

4. Finished plants are sold and delivered to independent garden centers, retailers, and landscapers throughout North America. "Plugs and liners" are essentially high quality starts that Skagit Gardens sells either through brokers or directly to greenhouses and nurseries for transplanting. The greenhouses and nurseries then produce the finished plants for sale to their customers.

5. Skagit Gardens delivers its products on its own trucks, by common carriers, plane, and even barge.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt

Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 2 of 15

6. Skagit Gardens maintains a steady workforce of approximately 150 employees, with a seasonal high of 275 – 300 employees, making it one of the 20 largest employers in Skagit County. Attached hereto as Exhibit A is a true copy of an article printed from the Port of Skagit County website.

7. Annual gross revenues are typically $20,000,000 – $25,000,000.

8. For reasons discussed in more detail below, about six months ago, Skagit Gardens found it necessary to market the company for sale. It has successfully located an interested buyer ("Buyer"), negotiated the terms of a sale, and the Debtors plan to file a motion relating to the proposed sale and bidding procedures prior to the hearing on the Debtors' Emergency Motions.

9. Skagit Gardens' business is seasonal in nature, with its primary growing and sale season beginning early in the year and running through August. It has filed this case in order to consummate a sale transaction quickly, thereby capturing as much value as possible during the current growing season. This approach will maximize the value of the business for the benefit of all of Skagit Gardens' constituents, including its secured lenders, employees, vendors and suppliers.

10. As previously indicated, Skagit Gardens owns two direct subsidiaries, SREH and Skagit TPPSPE. In turn, SREH wholly owns RESPE. Otherwise, neither SREH nor TPPSPE currently own any assets.

11. At some point in the past, TPPSPE owned some personal property used by Skagit Gardens in its operations, apparently as part of the financing structure previously in place. Today, it holds no assets, and Skagit Gardens owns all of the personal property used in its operations. TPPSPE is included in these cases due to the historical structure and to insure, to the Buyer's satisfaction, that it is acquiring all of the assets essential to the Company's operations.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 3

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 3 of 15

12. Skagit Gardens operates in two locations, both owned by RESPE. The Debtors' main offices and ten acres of greenhouses are located on 21.59 acres at 3100 Old Highway 99 South, Mount Vernon, Washington (the "Highway 99 Property"). The second location includes approximately three acres of greenhouses and 17 acres of outdoor growing beds, located at 14207 River Bend Road, Mount Vernon, Washington (the "River Bend Property").

13. In 2008, Aequitas Capital Group ("Aequitas Capital") purchased Skagit Gardens. Over the years, Skagit Gardens' financial performance has been uneven, with some years profitable and some not.

14. In early 2014, the Company engaged Hamstreet and Associates ("Hamstreet") to help restructure the Debtors' operations and to obtain replacement financing for the Debtors' line of credit provider, then Wells Fargo. Working with Hamstreet, Skagit Gardens obtained a new line of credit from NewStar Business Credit, as Administrative Agent and Lender ("NewStar"), in late 2014.

15. The Company generated positive EBITDA of $933,000 in 2014. Financial results were uneven during 2015, in part due to extreme weather conditions, including a prolonged drought in the West combined with a late spring in the inter-mountain region, and Skagit Garden again encountered financial struggles, ending 2015 with a slightly negative EBITDA of ($141,000).

16. In fall 2015, NewStar conditioned its continued financing on the support funding by Skagit Gardens' shareholder, Aequitas Capital or an affiliate, of a $1.2 million seasonal line of credit ("Aequitas Seasonal Line"). The plan was for the Aequitas Seasonal Line to be available beginning in January 2016 for Skagit Gardens' use in ramping up for the January through August growing season.

17. As discussed below, Aequitas Capital and its affiliates had previously loaned over $11 million to Skagit Gardnes over the years, which amounts were secured by security interests in the Debtors' assets, junior and subordinated to NewStar.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 4 of 15

18. In late 2015, Skagit Gardens was approached by a potential buyer interested in acquiring the Company as a going concern. However Aequitas refused to consent to any sale that failed to provide it a distribution on its secured debt or its equity. Consequently, the Debtors ended their discussions with that potential buyer.

19. Ultimately, Aequitas advanced only $340,000 of the committed $1.2 million Aequitas Seasonal Line. Aequitas' underfunding created severe cash pressures and shortfalls for Skagit Gardens as it headed into its critical growing season.

20. In late January 2016, Aequitas informed Skagit Gardens that it was incurring its own severe financial challenges, had made significant layoffs, and would be unable to make any further advances on the Aequitas Seasonal Line.

21. In February 2016, faced with ongoing losses, Skagit Gardens renewed discussions with the interested Buyer and began negotiating the terms of a sale contemplated to close outside of a bankruptcy. The parties were close the terms of a final, agreed Asset Purchase Agreement that would close without the need for a bankruptcy.

22. Unfortunately, Aequitas' financial woes came to a head in early March of 2016. On March 10, 2016, the Securities and Exchange Commission ("SEC") filed a lawsuit against Aequitas Management, LLC ("Aequitas Management") and numerous affiliates in the United States District Court for the District of Oregon, Case No. 3:16-cv-00438-PK. A Stipulated Order Appointing Receiver was quickly entered, and Ron Greenspan of FTI Consulting, Inc. was appointed receiver ("Aequitas Receiver") over the various Aequitas entities ("Aequitas Receivership").

23. Skagit Gardens and its affiliates are not receivership defendants, relief defendants, or otherwise parties to the Aequitas Receivership. Skagit Gardens' management and professionals have

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 5 of 15

kept the Aequitas Receiver apprised of the sale efforts and potential need for a Chapter 11 to complete those sale efforts.

24. In light of the complexities created by the Aequitas Receivership, the Buyer agreed to proceed with sale negotiations only in the context of a Chapter 11 filing by the Debtors, with the intended sale to be approved by an order of the Bankruptcy Court pursuant to Bankruptcy Code §363.

25. As of the Petition Date, the Buyer and the Debtors have entered into an Asset Purchase Agreement (the "APA") setting forth the terms of an asset sale, subject to higher bids according to procedures set by this Court. The terms of the APA represent the highest and best offer for the Debtors' assets to date.

26. Once it became clear, in early March, that a competitive sales process was likely to occur, Skagit Gardens management and professionals contacted numerous parties that might have an interest in acquiring the Debtors. In total, they contacted 15 parties to gauge interest, 12 of which signed Non-Disclosure Agreements (the "NDA") and received due diligence information. Of those, the Debtors' management and professionals had substantive meetings and conversations with at least nine, and at least seven have expressed serious interest in purchasing Skagit Gardens. Skagit Gardens' strong reputation and niche in the industry have attracted strong interest from strategic buyers.

27. The Debtors communicated to each that the sale process would be completed through a Chapter 11, with an initial stalking horse, against which competitive overbids could be submitted with an auction to determine the highest and best offer. As part of these discussions with interested buyers, the Debtors have informed them that the process will move very quickly with competitive bids expected to be due in the latter part of June.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 6 of 15

28. The Debtors filed their consolidated cases to complete the sales process and ultimately consummate the highest and best transaction for the benefit of its existing secured lenders, employees, and vendors/suppliers. The APA that will be filed shortly with the Court delivers a substantial recovery to Sterling Bank and Bank of the West (discussed below) of approximately 85% of their debt, provides for continued employment of the Debtors' employees, and provides for value to unsecured vendors/suppliers and a continuing business relationship with Skagit Gardens post-closing. If competitive bids are received, all constituents will benefit.

**Cash Collateral Motion**

29. In 2008, SREH and RESPE entered into a Credit Agreement with Bank of the West ("BOTW") pursuant to which BOTW extended a term loan to SREH and RESPE in the maximum amount of $5,655,000 (the "BOTW Term Loan"). Attached hereto as Exhibit B is a true copy of the Credit Agreement.

30. Attached hereto as Exhibit C is a true copy of a Deed of Trust recorded with the Skagit County Auditor.

31. Attached hereto as Exhibit D is a true copy of a Continuing Guaranty executed by Skagit Gardens.

32. As of the Petition Date, the outstanding balance on the BOTW Term Loan was approximately $2,764,636.

33. In late 2014, Skagit Gardens entered into a Loan and Security Agreement with NewStar. Attached hereto as Exhibit E is a true copy of the Loan and Security Agreement.

34. Attached hereto as Exhibit F are true copies of Guaranty Agreements executed by SREH, TPPSE and RESPE.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 7 of 15

35. Attached hereto as Exhibit G are true copies of Security Agreements executed by SREH, TPPSPE and RESPE.

36. Attached hereto as Exhibit H are true copies of UCC-1 financing statements filed with the Washington Department of Licensing.

37. Attached hereto as Exhibit I is a true copy of a Deed of Trust recorded with the Skagit County Auditor.

38. As of the morning of the Petition Date, the outstanding balance of the NewStar Loans was approximately $5,235,042.10. Prepetition, Sterling National Bank ("Sterling Bank") acquired the NewStar Loans.

39. Attached hereto as Exhibit J is a true copy of a Management Advisory Services Agreement executed by Skagit Gardens and Aequitas Management.

40. Since the beginning of 2011, Skagit Gardens paid Aequitas management and success fees totaling $871,725. As of the Petition Date, outstanding Aequitas Management fees totaled approximately $60,000.

41. In November 2010, Skagit Gardens entered into a Business Loan Agreement with Aequitas Capital affiliate, Aequitas Commercial pursuant to which Aequitas Commercial agreed to loan Skagit Gardens $1,650,000 (the "2010 Aequitas Loan"). Attached hereto as Exhibits K and L are true copies of a Business Loan Agreement (and amendments thereto) and a Promissory Note executed by Skagit Gardens.

42. Attached hereto as Exhibits M and N are true copies of Commercial Security Agreements executed by Skagit Gardens and TPPSPE, respectively, in favor of Aequitas Commercial.

43. Attached hereto as Exhibit O are true copies of UCC-1 financing statements filed with the Washington Department of Licensing.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt

Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 8 of 15

44. As of the Petition Date, the asserted amount owing under the 2010 Aequitas Loan was approximately $11,440,361. Of amounts advanced by Aequitas, $6,378,219 was advance to pay off debt from third parties originally used by Aequitas to purchase Skagit Gardens, and $5,114,280 was provided as working capital to Skagit Gardens.

45. Since the beginning of 2011, Skagit Gardens has paid interest to Aequitas totaling $871,725.

46. Attached hereto as Exhibit P is a true copy of a Business Loan Agreement executed by Skagit Gardens and Aequitas Commercial.

47. Attached hereto as Exhibit Q is a true copy of a Promissory Note executed by Skagit Gardens in favor of Aequitas Commercial.

48. Attached hereto as Exhibit R is a true copy of a UCC-1 financing statement filed with the Washington Department of Licensing on December 29, 2015.

49. Aequitas advanced only a portion of the committed funds, or $340,000.

50. Attached hereto as Exhibit S is a true copy of a Subordination and Intercreditor Agreement executed by Aequitas Commercial In connection with the NewStar financing.

51. Skagit Gardens entered into a Lease Agreement with Agricredit Acceptance, LLC ("Agricredit") pursuant to which Skagit Gardens leases tractors. A true copy of the Lease Agreement is attached hereto as Exhibit T.

52. Attached hereto as Exhibit U are true copies of UCC-1 financing statements filed with the Washington Department of Licensing on March 31, 2015 and January 20, 2016.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 9 of 15

**Cash Management Motion**

53. Prior to the commencement of this Chapter 11 case, Skagit Gardens maintained four bank accounts and SREH maintained one bank account as follows:

| Account Holder | Bank | Account No. | Purpose of Account |
|---|---|---|---|
| Skagit Gardens | Wells Fargo | 4808 | Collections Lockbox (restricted) |
| Skagit Gardens | Wells Fargo | 9710 | Checking |
| SREH | BOTW | 4491 | Savings |
| Skagit Gardens | Peoples Bank | 5754 | Required reserve for credit card processing (restricted) |
| Skagit Gardens | Peoples Bank | 5338 | Reserve Account |

54. The flow of funds among the debtors accounts is as follows: All deposits (lockbox, manual and electronic) are made into Wells Fargo Account No. 4808 which is a lockbox account in favor of secured lender, Sterling Bank. Sterling Bank applies the available balance to the Debtors' outstanding obligations to Sterling Bank. Skagit requests draws from Sterling Bank to meet the Debtors' expenses which Sterling Bank then transfers into Wells Fargo Account 9710 for further disbursement by Skagit Gardens. Funds to service RESPE's obligations to Bank of the West are held in BOTW Account No. 4491.

55. The Debtors' cash management system is an integral part of their business operations. Requiring the Debtors to establish a new cash management system would cause delay and produce disruption, particularly when the Debtors are already subject to the usual operational adjustments attendant to a Chapter 11 filing.

56. The parties with which the Debtors transact business will be aware of their status as debtors-in-possession. Use of existing accounts and checks will ensure that there is a smooth transition into Chapter 11 and minimal disruption of the Debtors' operations.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS –
Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 10 of 15

57. Skagit Gardens is a party to an agreement with Wells Fargo Bank to provide processing and settlement services for payment of credit and debit card purchase by customers.

58. Very few purchases by Skagit Gardens' customers are made by credit or debit card, as the vast majority of customers are other businesses that typically pay by check, wire, or other similar transfer.

59. The processing and settlement services are necessary for the few credit card and debit card purchases made.

60. Unlike heavy retail businesses, in which most customers use credit/debit cards and charge backs can be a significant business issue, Skagit Gardens experiences virtually no charge back issues in its business. In the 15 years since the current receivables clerk has been working at Skagit Gardens, there have only been two charge back issues, one stemming from a dispute with a customer and the other due to a charging error on two customers with similar names.

61. In order to maintain regular and normal customer relations and preserve its collection systems and procedures, it is important for Skagit Gardens to continue its current processing and settlement arrangement with Wells Fargo during the case.

**Wage Motion**

62. Skagit Gardens requests entry of an order authorizing (a) Skagit Gardens to honor its Prepetition Employee Obligations in the ordinary course of its business, and to continue to honor its Prepetition Employee Obligations, and (b) Skagit Gardens' banks and other financial institutions to process, honor, and pay checks or electronic transfers issued by Skagit Gardens and to honor prepetition transfers made by Skagit Gardens in connection with the foregoing.

63. Skagit Gardens currently has approximately 228 Employees, which number may increase to as many as approximately 275 during the April and May growing season. Skagit Gardens

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS –
Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA   Doc 21   Filed 05/27/16   Ent. 05/27/16 17:43:18   Pg. 11 of 15

has incurred costs and obligations with respect to the Employees that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date. Skagit Gardens seeks to pay its prepetition obligations to the Employees with respect to such costs and obligations.

64. Skagit Gardens pays wages and salaries of the Employees on a bi-weekly basis; with commissions, in addition to base pay, paid to sales staff. Skagit Gardens' estimates its aggregate gross bi-weekly payroll for all of the Employees for the period ending June 5, 2015 will be approximately $380,000. It is critical to the continuation of Skagit Gardens' operations, and to Skagit Gardens' smooth transition into Chapter 11, that payments to its Employees be made in a timely manner. It is critical to the continuation of the Debtors' operations, and to Skagit Gardens' smooth transition into Chapter 11, that payments to its Employees be made in a timely manner. In light of the foregoing, Skagit Gardens seeks authority to pay its Payroll Obligations for work performed prior to the Petition Date for the pay period ending June 5, 2016 in accordance with its ordinary prepetition practices. No employee is owed more than $12,475 for prepetition wages. In addition, for those Employees who do not receive a direct deposit, there may be checks issued to Employees for pay periods ending prior to the Petition Date, which have not cleared as of the Petition Date and which the Employees will seek to cash or deposit postpetition.

65. Skagit Gardens sponsors benefit plans for the Employees, including medical, dental, vision care, disability, and life insurance plans, along with contributions towards Employees' Health Savings Accounts, and administration of a Wellness Program ("<u>Benefit Plan Obligations</u>"). Skagit Gardens pays approximately $54,000.00 per month pursuant to a variety of contracts with third-party insurance administrators to cover the health and welfare benefits of its Employees, which amount includes both the Employee and Skagit Gardens (as employer) portions of the Benefit Plan Obligations; in addition, Skagit Gardens contributes toward Employees' Health Savings Accounts,

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS  –
Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 12 of 15

with monthly contributions in the approximate amount of $4,000.00.  The Employee portions of the Benefit Plan Obligations are funds withheld from the Employees by Skagit Gardens and remitted to various third-party insurance administrators.   Skagit Gardens' Wellness Program allows for an Employee to be reimbursed a certain amount of his or her Employee-paid portion of health insurance premiums.  Under the program, an Employee who participates in at least two Wellness Opportunities per quarter (one per month is offered) is reimbursed one-half of the premium, or a maximum reimbursement of $128.37 per quarter, as a contribution toward the Employee's Health Savings Account.

66. Skagit Gardens withholds from the wages of the participating Employees contributions towards a 401(k) plan.   Prior to the Petition Date, the Employees participating in the 401(k) plan paid approximately $25,000.00 in Withholding Contributions to Skagit Gardens on a monthly basis.   In addition, Skagit Gardens matches a portion of the Employee 401(k) plan contributions, with monthly matching by Skagit Gardens in the approximate amount of $10,000.00.

67. Prior to the Petition Date and in the ordinary course of its business, Skagit Gardens reimbursed Employees for expenses incurred in the scope of their employment. Skagit Gardens also directly reimbursed third-party credit card providers for expenses incurred by Employees.  Skagit Gardens pays on average approximately $8,784 per month in connection with expenses incurred by the Employees relating to business-related travel expenses, business meals, car rentals, and a variety of other miscellaneous business expenses.  All of such expenses are incurred by Employees on Skagit Gardens' behalf in connection with employment by Skagit Gardens and in reliance upon Skagit Gardens' reimbursement policy.

68. Skagit Gardens is required by law to withhold from the Employees' wages amounts related to federal income taxes, and social security and Medicare taxes and to remit the same to the

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF DEBTORS' EMERGENCY FIRST DAY MOTIONS – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 13 of 15

appropriate taxing authorities. Skagit Gardens is required to match from its own funds the social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts of unemployment insurance and to remit the Payroll Taxes to the Taxing Authorities. Skagit Gardens estimates that, on a monthly basis, it remits a total of $128,000.00 including both Employer Payroll Taxes and Trust Funds Taxes to the Taxing Authorities.

69. The post-petition stability of Skagit Gardens' workforce is integrally tied to Skagit Gardens' ability to continue to honor the Prepetition Employee Obligations. Any delay in payments to Employees will impact Skagit Gardens' relationship with essential workers and may irreparably harm employee morale, dedication, confidence and cooperation. The support and efforts of Skagit Gardens' workforce during the pendency of Skagit Gardens' Chapter 11 case are critical to the Debtors' successful reorganization. At this early stage, Skagit Gardens cannot risk losing the critical mass of its personnel or suffering the substantial damage to its business that would inevitably result from any decline in employee morale. In addition, for many of the Employees, the payments received from Skagit Gardens are needed to enable the Employees to meet their own financial obligations. As a result, absent an order granting the relief requested in this Motion, the Employees and their families are likely to suffer personal hardship and, in many instances, serious financial difficulties.

**Utility Motion**

70. Prior to the Petition Date, the Utility Companies provided Utility Services to Skagit Gardens. The services provided by the Utility Companies are crucial to the continued operations of Skagit Gardens and Skagit Gardens may suffer irreparable harm if the relief requested in the Utilities Motion is not granted by the Court.

71. Skagit Gardens fully intends to pay all postpetition obligations owed to the Utility Companies in a timely manner.

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS   –
Page 14

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 14 of 15

72. Skagit Gardens believes that the relief requested in the Utility Motion and proposed Order strikes a fair balance between the rights of Utility Companies and the rights of Skagit Gardens under the Bankruptcy Code and the need, for the benefit of Skagit Gardens and its estate, for Skagit Gardens to continue to receive the Utility Services upon which its businesses depend.

73. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 27th day of May, 2016.

/s/ Mark Buchholz
Mark Buchholz

DECLARATION OF MARK BUCHHOLZ IN SUPPORT OF
DEBTORS' EMERGENCY FIRST DAY MOTIONS  –
Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ac275w03dt
Case 16-12879-CMA    Doc 21    Filed 05/27/16    Ent. 05/27/16 17:43:18    Pg. 15 of 15