Below is the Order of the Court.

Christopher M. Alston
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

SKAGIT GARDENS, INC. *et al.*[1]
3100 Old Highway 99 South
Mount Vernon, WA 98273
80-0161154,

                    Debtors.

Lead Case No. 16-12879-CMA

ORDER:
(1) AUTHORIZING SKAGIT GARDENS, INC.'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION THEREFOR PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE, AND
(2) SETTING A FINAL HEARING

This matter came before the Court on the Motion ("Motion") of Skagit Gardens, Inc. ("Skagit Gardens"), debtor-in-possession herein, pursuant to sections 105, 361, 362, and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2, and 9013-

---

[1] The Debtors are Skagit Gardens, Inc., Skagit RESPE LLC, Skagit TPPSPE LLC, and Skagit Real Estate Holdings, LLC.

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Below is the Order of the Court.**

1(d)(2)(E) Local Rules of Bankruptcy Procedure for the Western District of Washington (the "Local
Rules"), for the entry of an Order authorizing, on an interim basis, Skagit Gardens' use of cash
collateral pursuant to a Budget (defined below), authorizing Skagit Gardens to grant, on an interim
basis, adequate protection in favor of parties ("Secured Parties")[2] asserting liens ("Prepetition Liens")
in substantially all of the assets of Skagit Gardens, including but not limited to deposit accounts,
accounts, inventory, goods, equipment and general intangibles ("Prepetition Collateral" as to which
Skagit Gardens seeks to use "cash collateral" as defined under Bankruptcy Code § 363(a) ("Cash
Collateral")).   The Court has reviewed the files and records herein and makes the following findings
of fact:

## FINDINGS OF FACT

A.     Skagit Gardens filed its petition for relief under Chapter 11 of the Bankruptcy Code
("Case") on May 27, 2016 (the "Petition Date").  Skagit Gardens has retained control over its assets
and continues to operate its business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B.     Skagit Gardens sent notice of the hearing on the Motion to Secured Creditors, the U.S.
Trustee, the twenty largest unsecured creditors, and state and federal taxing authorities.  Such notice is
adequate and reasonable under the circumstances pursuant to Bankruptcy Rules 4001 and Local Rule
4001 and 9013-1(d)(2)(E).

C.     Skagit Gardens' business consists of growing and sells two categories of plants,
finished plants sold to independent garden centers, retailers, and landscapers throughout North
America, and "plugs and liners," transplants sold to greenhouses and nurseries.

D.     As detailed in the Motion, Skagit Gardens requires the use of Cash Collateral to
continue its ongoing operations in the ordinary course of business, and in order to avoid disruption of

---

[2] Secured Parties for purposes of this Motion are Sterling National Bank as assignee of NewStar
Business Credit, LLC as Administrative Agent and Lender ("Sterling") and Aequitas Commercial Finance,
LLC ("Aequitas").

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rl

such operations.  The Court finds and concludes that Skagit Gardens and the estate will suffer immediate and irreparable harm if the relief approved hereby is not granted.

E.      Skagit Gardens represents that it is unable to obtain financing and, except Cash Collateral, has no source from which to fund the budgeted expenses necessary to preserve and protect the assets of the estate.

F.      Pursuant to §§ 361 and 363 of the Bankruptcy Code, Skagit Gardens has agreed to provide adequate protection of Secured Parties' interests in the Prepetition Collateral on the terms provided for herein and the budget attached hereto as Exhibit A (as amended in accordance herewith, the "Budget").

G.      With respect o Skagit Gardens' daily collections and flow of funds, customer payments are typically deposited into a lockbox account maintained by Skagit Gardens at Wells Fargo ("Lockbox Account").  Prior to the Petition Date, Sterling National Bank ("Sterling") would collect deposits in the Lockbox Account, apply against the outstanding balance owed to Sterling and readvance funds to Skagit Gardens pursuant to the line of credit arrangement in place.  Sterling's advances to Skagit Garden are deposited into its general operating/checking account, also maintained at Wells Fargo ("Wells Checking Account").

H.      As part of the Budget and Skagit Gardens' request to use Cash Collateral, Skagit Gardens proposes to create and fund a professional fund ("Professional Fund") on a postpetition basis in order to pay the Debtors' and the Official Unsecured Creditors Committee's ("Committee") professional fees and costs as the Court may authorize and allow by subsequent order following notice and hearing.  Skagit Gardens proposes to deposit all funds budgeted for the Professional Fund with Bush Kornfeld LLP, attorneys for the Debtors, where such funds would be held in trust pending further order of the court following notice and hearing.  Skagit Gardens believes that the proposed Professional Fund is appropriate given the size and nature of this Case and the likely creation and participation of a Committee in this Case.

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rj

**Below is the Order of the Court.**

I.     Based on the record before this Court, including the Budget, the fact that ongoing operations will continue to maximize the value of the Skagit Gardens' assets and estate, and the granting of replacement liens to the Secured Parties to secure any diminution in the value of their interests which may occur as a result of Skagit Gardens' use of Cash Collateral, the Court finds that, on an interim basis, the interests of the Secured Parties are adequately protected, as contemplated by §§ 361 and 363 of the Bankruptcy Code.

<strong>ORDER</strong>

Based on the foregoing findings, it is hereby

<u>**ORDERED as follows:**</u>

1.     <u>Motion Granted</u>.  Skagit Gardens' Motion is granted on an interim basis pursuant to the terms and conditions of this order (this "<u>Interim Order</u>").

2.     <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, Skagit Gardens is authorized to use Cash Collateral in an amount not to exceed the total amount set forth in the Budget (the "<u>Maximum Amount</u>") for use through the close of business Seattle time (the "<u>Expiration Time</u>") on the date set for the Final Hearing (defined below).  Skagit Gardens' authority to use Cash Collateral shall terminate automatically without further order of this Court if a final or further interim order is not entered on or before the Expiration Time.  Any amounts paid by Skagit Gardens pursuant to this Interim Order and in accordance with the Budget shall be paid free of any lien of any Secured Party.  To the extent that funds are deposited into the Lockbox Account, Skagit Gardens shall be entitled to use such funds pursuant to the terms of this Interim Order, including any funds that were in the Lockbox Account at the time of the filing of the Petition.  Funds deposited into the Lockbox Account shall be transferred to Sterling to be held (but not applied to Skagit Gardens' obligations owed to Sterling) in a segregated account pending Skagit Gardens' delivery of requests for advances to fund the payment of current obligations consistent with the Budget and this Order

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Below is the Order of the Court.**

("Transfer Request").  Transfer Requests may be made to fund weekly or daily amounts.  Upon

receipt of a conforming Transfer Request before 9:00 a.m., Pacific Time, on a business day, Sterling

shall, no later than the close of business on the same business day, transfer the requested funds to

Skagit Gardens' Wells Checking Account.

    3.   <u>Budget</u>.  Without Sterling's prior written consent and subject only to subsections (a)

through (c) of this section, Skagit Gardens is not authorized to make any expenditures except in

accordance with the Budget and this Interim Order and for fees of professionals retained pursuant to

terms set forth in further orders of the Court.

    a.   With prior notice to and/or approval of Sterling National Bank, Skagit Gardens

may reallocate payments from cash collateral among Budget line items.  The Budget may be amended

from time to time with the written consent and/or at the request of Sterling and Skagit Gardens and on

notice to any Creditors' Committee (if and when formed), <u>provided that</u> such amended Budget (i)

shall be in a form and substance acceptable to Sterling, in its reasonable discretion, (ii) Skagit Gardens

shall remain bound by this Interim Order and its obligation hereunder to comply with the Budget (as

amended) and (iii) is filed by Skagit Gardens with the Court promptly.  Such amended Budget shall

remain in effect unless a party in interest files and serves an objection on counsel for Skagit Gardens,

the Secured Parties and the Creditors' Committee (if and when formed) and requests a hearing with

respect thereto, provided, however, that no later order of the Court shall impair any payment

previously made in accordance with such amended Budget.

    b.   With respect to any Fixed Expense (defined below) (i) Skagit Gardens'

payment of any Fixed Expense shall not exceed the corresponding expense line item set forth in the

Budget for such Fixed Expense by more than ten percent (10%) in any one week; and (ii) the total

amount used to pay all Fixed Expenses in any one week shall not exceed the total amount set forth in

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rj

Case 16-12879-CMA   Doc 59   Filed 06/02/16   Ent. 06/02/16 12:15:50   Pg. 5 of 12

the Budget for all Fixed Expenses for that week by more than five percent (5%); provided that Skagit

Gardens may defer and pay a Fixed Expense budgeted for one week during any of the succeeding

weeks, so long as the cumulative expenditures from the Petition Date through the week when such

deferred payment is made do not exceed the cumulative budgeted amount (A) for such Fixed Expense

line item by more than 10%, and (B) for all Fixed Expense line items by more than 5%. For purposes

of this paragraph, "Variable Expenses" means the following specific line items in the Budget:

"Freight/American Trans/Plants Express/UPS," "Yorkston Oil," and "Taxes", and "Fixed Expenses"

means all line items in the Budget that are not Variable Expenses. For clarification purposes, with

respect to the "Total Raw Materials" line item in the Budget, that is the actual line item that shall be

subject to the variances set forth in the Section; the specified Suppliers listed above are provided as

estimates and not intended to be specific, individual line items for purposes of this Order.

     c.    To the extent that any of the items set forth in the Budget became due prior to

the Court's entry of this Interim Order (but subsequent to the Petition Date), Skagit Gardens is

authorized to use Cash Collateral to pay such items after the entry of the Interim Order and such items

shall be treated as having been paid during the week set forth in the Budget for purposes of

determining whether Skagit Gardens is in compliance with the Budget.

     4.    Commitment Milestones. The Debtor commits to meeting the following milestones in

connection with the administration of these cases and the orderly liquidation of substantially all the

Debtors' assets (each a "Milestone"):

     a.    By no later than July 22, 2016, obtain an order from the Bankruptcy Court

approving the Proposed Sale, in form and substance reasonably acceptable to Sterling; and

     b.    By no later than July 31, 2016, close the Proposed Sale.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

5.   <u>Adequate Protection Lien and § 507(b) Rights</u>.  As adequate protection for the diminution of any interest that Secured Parties are determined to hold in the Prepetition Collateral as a result of Skagit Garden's use of Cash Collateral, Secured Parties are each hereby granted a replacement lien ("<u>Postpetition Lien</u>") in Skagit Gardens' postpetition assets of the same kind, type, and nature as the Prepetition Collateral in which such Secured Party held a lien ("<u>Postpetition Collateral</u>").  Any Postpetition Lien in Postpetition Collateral granted by this paragraph shall be in the same order, priority, validity and enforceability as any prepetition lien in Prepetition Collateral securing the claim of such Secured Party in the same type of assets and, under 11 U.S.C. § 510, shall be subject to the terms of any and all intercreditor subordination agreements executed by and among the Secured Parties in favor of Sterling.  To the extent of any diminution in value of a Secured Party's interest in the Prepetition Collateral due to Cash Collateral use which is not otherwise protected by the Postpetition Lien granted herein, each Secured Party shall retain its rights under section 507(b) of the Bankruptcy Code ("<u>507(b) Claim</u>").  The Postpetition Lien and retention of rights under section § 507 of the Bankruptcy Code constitute adequate protection of Secured Parties' interest in the Prepetition Collateral during the term of this Interim Order, but shall not prejudice the rights of any Secured Party to request additional adequate protection at any time.

6.   <u>Evidence of Postpetition Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Postpetition Liens.

7.   <u>Additional Adequate Protection</u>.  As additional adequate protection to the Secured Parties, Skagit Gardens shall:

   a.   continue to maintain insurance on its assets as the same existed as of the Petition Date;

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rj

b.      provide to each Secured Party and the Unsecured Creditors Committee (if and when formed), on or before the 15th day of each month, a report reflecting actual revenues and expenses for the prior month, as compared to the Budget for that month; and

c.      not later than Monday of each week, Skagit Gardens shall provide each Secured Party and the Unsecured Creditors Committee (if and when formed) with a report reflecting all sales for the prior week in a form substantially similar to sales reports provided to Sterling prepetition.

8.      Professional Fund. The Professional Fund is approved with Skagit Garden to fund the amounts consistent with the Budget for that purpose. The Professional Fund shall be deposited and maintained in the trust account Bush Kornfeld LLP, attorneys for Skagit Gardens, where such funds shall be held in trust pending further order of the court following notice and hearing and for the *pro rata* benefit of the estate and Committee professionals. To the extent the amounts deposited into the Professional Fund exceed the allowed fees and costs of the respective estate and Committee professionals, such excess funds shall remain subject to the rights of the Secured Creditors.

9.      Surcharges. The Court reserves all rights to determine whether any surcharge should be imposed on the Prepetition Collateral of any Secured Party pursuant to any future motion filed under section 506(c) of the Bankruptcy Code. No Secured Party consents to any such surcharge by its agreement to, or failure to object to the entry of this Interim Order, but each Secured Party reserves all of its defenses to any such motion.

10.     Effective Date and Binding Effect. This Interim Order shall be effective as of the date and time of entry hereof and be binding upon Skagit Gardens, all parties in interest in this Case, and their respective successors and assigns, including any trustee or other fiduciary appointed in this Case

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rj

Case 16-12879-CMA    Doc 59    Filed 06/02/16    Ent. 06/02/16 12:15:50    Pg. 8 of 12

**Below is the Order of the Court.**

or any subsequently converted bankruptcy case(s) of Debtor. This Interim Order shall also inure to the benefit of the Secured Parties, Skagit Gardens, and their respective successors and assigns. The provisions of this Interim Order, any § 507(b) Claim, any and all rights, remedies, privileges, interests, and benefits in favor of Secured Parties provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 4001 and 7062, shall continue in full force and effect, and shall survive entry of any other order, including without limitation any order which may be entered confirming any plan of reorganization, converting this Case to any other chapter under the Bankruptcy Code, or dismissing this Case. Any order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise shall provide by virtue of this Interim Order (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the rights of the professionals shall continue in full force and effect to the greatest extent permitted by applicable law, notwithstanding such dismissal, and (b) notwithstanding such dismissal, this Court shall retain jurisdiction over any § 507(b) Claim, the Professional Fund, and the rights, privileges, interests, and benefits provided or acknowledged in this Interim Order to the fullest extent permitted by applicable law.

11. <u>Expedited Hearing on Default</u>. In the event of any material breach or default by Skagit Gardens under the terms of this Interim Order, Sterling shall be entitled to a hearing on shortened notice, subject to the Court's calendar, regarding whether the automatic stay should be modified as a result of the failure of Skagit Gardens to provide the adequate protection required by this Interim Order.

12. <u>Objections Overruled</u>. All objections to the Motion (if any) with respect to entry of this Interim Order are hereby overruled.

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2069 20141 ae312h00rj

Case 16-12879-CMA    Doc 59    Filed 06/02/16    Ent. 06/02/16 12:15:50    Pg. 9 of 12

13.  Final Hearing.  The final hearing on the Motion (the "Final Hearing") is hereby set for Friday, June 17, 2016, at 11:00 a.m.  Objections shall be due on Monday, June 13, 2016, no later than 5:00 p.m., Pacific time,.  Any reply shall be due on Wednesday, June 15, 2016, no later than 5:00 p.m., Pacific time,.

/ / /End of Order/ / /

Presented by:

BUSH KORNFELD LLP

By    /s/ Armand J. Kornfeld
  Armand J. Kornfeld, WSBA #17214
  Christine M. Tobin-Presser, WSBA #27628
Attorneys for Debtors-in-Possession

Approved; Notice of Presentation Waived:

HILLIS CLARK MARTIN & PETERSON

By    /s/ Josh Rataezyk
  Josh Rataezyk, WSBA #33046
  Bradley R. Duncan, WSBA #36436
Attorneys for Sterling National Bank

ORDER RE: USE OF CASH COLLATERAL AND
ADEQUATE PROTECTION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| Skagit Gardens, Inc. | Week Ending | 21 (Thru 5/27) | 22 | 23 | 24 | 25 | 26 | 27 (Sale Down) | 28 (Sale Down) | Weeks 22-28 Total |
| 12 Week Cash Flows | | 5/27/2016 | 6/3/2016 | 6/10/2016 | 6/17/2016 | 6/24/2016 | 7/1/2016 | 7/8/2016 | 7/15/2016 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | |
| Finished | | 876,000 | 740,000 | 618,000 | 477,359 | 364,311 | 282,772 | 156,433 | 165,390 | 2,804,265 |
| Liners | | 68,000 | 49,000 | 37,000 | 30,415 | 27,482 | 25,651 | 16,880 | 33,759 | 220,186 |
| Freight | | 90,000 | 90,000 | 65,000 | 65,000 | 65,000 | 65,000 | 20,000 | 20,000 | 390,000 |
| 1 Total Revenues | | 1,034,000 | 879,000 | 720,000 | 572,773 | 456,793 | 373,423 | 193,312 | 219,149 | 3,414,451 |
| **Disbursements** | | | | | | | | | | |
| 2 Payroll & Related | | | | | | | | | | |
| Payroll & Contract Labor | | 350,000 | | 390,000 | | 295,000 | | 330,000 | | 1,015,000 |
| Health Insurance | | 48,000 | | | | | 48,000 | | | 48,000 |
| 401k | | | 22,000 | | 22,000 | | 22,000 | | 22,000 | 88,000 |
| **Interest & Bank Fees** | | | | | | | | | | |
| 3 Bank fees | | | 5,000 | | | | 5,000 | | | 10,000 |
| 4 Sterling Interest & Fees | | | 23,000 | | | | 23,000 | | | 46,000 |
| **Suppliers** | | | | | | | | | | |
| Individual supplier payments are estimated for raw materials. Actual will depend on needs. | | | | | | | | | | |
| Ball | | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 5,775 | 5,425 | 54,950 |
| Macore Company | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 9,900 | 9,300 | 94,200 |
| McConkey | | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 13,750 | 9,075 | 8,525 | 86,350 |
| McHutchison | | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 8,250 | 7,750 | 78,500 |
| SHS Griffin | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 6,600 | 6,200 | 62,800 |
| Skagit Farmers | | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 5,775 | 5,425 | 54,950 |
| Sumas GroMedia | | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 7,425 | 6,975 | 70,650 |
| Terra Nova | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 2,475 | 2,325 | 23,550 |
| Other Material suppliers | | 41,250 | 41,250 | 41,250 | 41,250 | 41,250 | 41,250 | 27,225 | 25,575 | 259,050 |
| 5 Total Raw Materials | | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 82,500 | 77,500 | 785,000 |
| 6 Other Supplies (non-inventoried + not on order) | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 175,000 |
| **Shipping Vendors** | | | | | | | | | | |
| 7 Freight / American Trans / Plants Express / UPS | | 100,000 | 115,000 | 72,500 | 100,000 | 95,000 | 90,000 | 60,000 | 60,000 | 592,500 |
| 8 Penske Truck Lease | | | | | | | 20,000 | 20,000 | | 20,000 |
| 9 Yorkston Oil | | 25,000 | 25,000 | 15,000 | 25,000 | 20,000 | 20,000 | 10,000 | 10,000 | 125,000 |



EXHIBIT A

| Skagit Gardens, Inc. 12 Week Cash Flows | Week Ending | 21 5/27/2016 | 22 6/3/2016 | 23 6/10/2016 | 24 6/17/2016 | 25 6/24/2016 | 26 7/1/2016 | 27 7/8/2016 | 28 7/15/2016 | Weeks 22-28 Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Other Notable Vendors** | | | | | | | | | | |
| 10 | Cost Management (Natural Gas) | | | | | | | | 10,000 | 20,000 |
| 11 | Utilities | | | | | 10,000 | | | 20,000 | 40,000 |
| 12 | Utility Deposits | | 24,000 | | | 20,000 | | | (24,000) | - |
| 13 | Palmer (Rent) | | 5,000 | | | | 5,000 | | | 10,000 |
| 14 | Property Taxes | | | | | | | | | - |
| 15 | Insurance | | | | | | | | | - |
| 16 | UST Fees | | | | | | 13,000 | | 13,000 | 26,000 |
| 17 | Misc | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 17,500 |
| 18 | Taxes* | | | | | | | | 33,000 | 33,000 |
| 19 | Contingency | 34,000 | 19,000 | 32,000 | 14,975 | 29,625 | 18,925 | 26,500 | 12,450 | 153,475 |
| **Total Disbursements for Products and Services** | | 709,500 | 390,500 | 662,000 | 314,475 | 622,125 | 397,425 | 556,500 | 261,450 | 3,204,475 |
| **Reserves** | | | | | | | | | | |
| 20 | Professional Fund | 35,000 | 35,000 | 35,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 220,000 |
| 21 | 50389 claims | | 20,000 | 20,000 | 20,000 | 20,000 | 10,000 | 10,000 | 5,000 | 105,000 |
| 22 | Royalties | | 20,000 | 20,000 | 20,000 | 20,000 | 10,000 | 10,000 | 5,000 | 105,000 |
| **Total Disbursements** | | 744,500 | 465,500 | 737,000 | 384,475 | 692,125 | 447,425 | 606,500 | 301,450 | 3,634,475 |
| **Cash Summary** | | | | | | | | | | |
| Beginning Cash | | 845,123 | 400,623 | 735,123 | 952,123 | 1,590,648 | 1,977,523 | 2,625,098 | 3,120,021 | |
| Collections | | 300,000 | 800,000 | 954,000 | 1,003,000 | 1,059,000 | 1,085,000 | 1,091,423 | 359,466 | |
| Disbursements | | (744,500) | (465,500) | (737,000) | (364,475) | (672,125) | (437,425) | (596,500) | (296,450) | |
| Ending Cash | | 400,623 | 735,123 | 952,123 | 1,590,648 | 1,977,523 | 2,625,098 | 3,120,021 | 3,183,037 | |
| Pre-Petition AR | | 4,561,763 | 3,863,962 | 3,063,962 | 2,313,962 | 1,563,962 | 813,962 | 63,962 | 20,000 | |
| Post-Petition AR | | - | 879,000 | 1,445,000 | 1,764,773 | 1,912,567 | 1,950,990 | 1,802,879 | 1,706,524 | |
| Total AR | | 4,561,763 | 4,742,962 | 4,508,962 | 4,078,735 | 3,476,529 | 2,764,952 | 1,866,841 | 1,726,524 | |
| Net Inventory | | 4,311,162 | 4,298,422 | 4,343,122 | 4,284,992 | 4,303,408 | 4,376,849 | 4,477,231 | 4,555,560 | |
| Working Capital (Cash + AR + Inv) | | 9,273,548 | 9,776,507 | 9,804,207 | 9,954,375 | 9,757,460 | 9,766,898 | 9,464,093 | 9,465,121 | |

* Skagit Gardens pays B&O, L&I and various city taxes. These amounts accrue during the bankruptcy period, but are not payable until after the estimated sale date.

Disclaimer: This presentation estimates performance of the Company based on historical data, estimates, and assumptions. It cannot be relied upon to reflect actual future results.